**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **ACTON ACADEMY, A NONPROFIT CORPORATION,** | § | |
| ***Plaintiff*** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 24-1456-DAE** |
| | § | |
| **TIM KENNEDY, et. al.,** | § | |
| ***Defendants*** | § | |

# PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff Acton Academy, a Nonprofit Organization ("Plaintiff") files this Response in Opposition to Defendants' Motion for Summary Judgment [Dkt. 75], and respectfully shows as follows:

## I. SUMMARY

The Court should deny Defendants' Motion for Summary Judgment because they have failed to conclusively negate any claim pled in Plaintiff's Second Amended Complaint. Plaintiff's breach of contract claim against Defendant Tim Kennedy ("Kennedy") withstands summary judgment because a genuine issue of material fact exists as to whether Kennedy executed two written agreements with Plaintiff in his personal capacity. Plaintiff's trademark claims withstand summary judgment because Kennedy has admitted to at least two direct breaches of the Plaintiff's trademark license agreement and acknowledged unauthorized use of Plaintiff's trademark terms. Moreover, at least one other Defendant removed material from its website in response to Plaintiff's assertion of trademark infringement. Finally, Plaintiff's trade secret and unfair competition claims withstand summary judgment because it took reasonable precautions to protect its unique compilation or aggregation of materials from unauthorized use or disclosure.

## II. EVIDENTIARY EXHIBITS

Plaintiff files the following exhibits, true and correct copies of which are attached, in support of this Response and fully incorporate each exhibit by reference:

Exhibit A: Declaration of Laura Sandefer, Executed November 22, 2024 (attached as 'Exhibit A' to Plaintiff's Original Complaint (Dkt. 1-1));

Exhibit A-1: Trademark License Agreement;

Exhibit A-2: Access and License Agreement;

Exhibit A-3: Correspondence from Acton Academy legal counsel, June 24, 2024;

Exhibit A-4: Correspondence from Acton Academy legal counsel, June 25, 2024;

Exhibit A-5: Emails between Matt Beaudreau and Acton Academy legal counsel;

Exhibit B: Declaration of Laura Sandefer, Executed November 9, 2024, in Cause No. D-1-GN-24-005074, *Acton Academy v. Matt Beaudreau, et al*, in the 53rd Judicial District Court of Travis County, Texas;

Exhibit C: Excerpts from Deposition of Corporate Representative for Apogee Cedar Park, LLC, Timothy Fred Kennedy, January 14, 2025, in Cause No. D-1-GN-24-005074, *Acton Academy v. Matt Beaudreau, et al*, in the 53rd Judicial District Court of Travis County, Texas;

Exhibit D: Excerpts from Deposition of Corporate Representative of Apogee Lockhart Life Learning Center, LLC, Ethan Peters, December 4, 2025;

Exhibit E: Excerpts from Deposition of Corporate Representative of Apogee Strong San Antonio, LLC, Haley Jackson, December 5, 2025; and

Exhibit F: Apogee Cedar Park LLC Certificate of Formation, November 24, 2020

Plaintiff also relies upon prior filings in the record as cited herein.

## III. MATERIAL FACTS

### A. Plaintiff and Plaintiff's Proprietary Materials

#### 1. Acton Academy and the Acton Model

Plaintiff Acton Academy is a 501(c)(3) entity and a transformative K12 "learner-driven" educational movement and organization that Jeff Sandefer and Laura Sandefer founded in 2009 in Austin, Texas. *Ex. A at ¶ 4*. Over the course of the following decade, the Sandefers devoted themselves to growing and developing Acton Academy into a network of more than 200 schools. *Ex. A at ¶ 5*. Acton Academy's learning design includes over 20,000 pages of interwoven proprietary materials, including unique and original examples, frameworks, processes, recipes, systems schedules, maps, contracts, audition funnels, challenges, and launches for learners, parents, guides, and owners. *Ex. A at ¶ 6; Ex. A-3 at p. 1*. These materials are collectively referred to herein as the "Acton Materials." The Acton Materials and content are legally protected and secured in relevant part by a Trademark License Agreement and Access and License Agreement, both of which must be acknowledged for an affiliate or its employees to access Acton Academy's learning design and content. *Ex. A at ¶ 6*.

#### 2. Acton Academy Agreements

In sum, the Trademark License Agreement provides for the restricted, limited use of Acton Academy's trademarked "Acton Academy" name and all associated goodwill, the restricted, limited use of a specific licensee name, and the restricted, limited use of a specific licensee domain name. *See Ex. A-1*. This agreement also includes the following post-termination provisions:

- Acton retains all rights, title and interest in and to the name and trademark "ACTON ACADEMY" and all associated goodwill;
- The licensee must cease using the Acton Academy name or anything deemed by Acton to be similar to its name; and

- The licensee must cease using its licensed domain name and all associated content;

*Ex. A-1 at ¶ 7.*

The Access and License Agreement provides Acton Academy's affiliates with limited use of its intellectual property, trade secrets, and proprietary materials, subject to restrictions designed to preserve the confidentiality and commercial value of the confidential information made accessible under the agreement. *See Ex. A-2.* In the relevant part, the Access and License Agreement requires that upon its termination, licensees "delete, destroy, or return all copies of [Acton's] IP and certify in writing to [Acton] that the [Acton] IP has been deleted or destroyed." *Ex. A-2 at ¶ 11(c).*

As set forth below, Kennedy and the entity founded and owned by Kennedy, Apogee Cedar Park, LLC d/b/a Apogee Cedar Park ("Apogee Cedar Park"), acknowledged and agreed to Acton Academy's Trademark License Agreement and Access and License Agreement. Nonetheless, they have improperly possessed and used Acton trademarks and proprietary materials.

**B. Plaintiff's Relationships with Kennedy and Apogee Cedar Park**

In 2020, Acton Academy approved Kennedy to open an Acton Academy campus he called "Apogee: an Acton Academy", which Kennedy consistently referred to as "Apogee Cedar Park" or "Apogee Cedar Park, an Acton Academy." Kennedy and Apogee Cedar Park signed and accepted the terms of Acton Academy's *Trademark License Agreement* and accepted the terms of Acton Academy's *Access and License Agreement*. *Ex. A at ¶ 9; Exs. A-1 – A-2*. By executing these agreements, as set forth in the provisions detailed above, Apogee Cedar Park and Kennedy agreed to the limited and restricted right to use the Acton Materials and content, the Acton Academy trademark name (*i.e.*, "Apogee an Acton Academy"), and the Acton Academy owned Domain Name (*i.e.*, "Apogeecedarpark.com").

**C. Acton Academy's Termination of Kennedy from the Acton Academy Network**

In mid-2022, Acton Academy terminated Kennedy's license for non-compliance under the terms of the agreement. As a result of the termination, and per the Acton Academy Trademark License Agreement and Access and License Agreement, Kennedy and his affiliates were required to destroy/delete/return Acton Academy materials, immediately discontinue their use, and certify the destruction/deletion/return in writing. In addition, per the Trademark License Agreement, upon termination, they were also required to cease use of the Acton Academy name or anything deemed by Acton to be similar to its name, meaning Kennedy was not permitted to continue using the names "Apogee" or "Apogee Cedar Park" or use the Acton Academy-owned domain name apogeecedparpark.com in connection with providing K-12 educational services. *Ex. B at* ¶ *5*; *Ex. C at 25:7*.

To date, neither Kennedy nor Apogee Cedar Park have certified in writing that all relevant and protected Acton Academy materials have been deleted or destroyed, and no such materials have been returned. *Ex. B at* ¶ *5; Ex. C at 55:3-7*. Further, Kennedy continues to use the name Apogee Cedar Park for his business and continues to use the apogeecedarpark.com domain in the provision of educational services. *Ex. C at 24:15-20, 27:12-15*. Moreover, as detailed below, Kennedy and Matt Beaudreau – another former Acton affiliate – have launched a competing national educational network using the "Apogee" name and the Acton Materials and content.

**D. The Apogee Entities**

Post-termination, despite the provisions of the *Trademark License Agreement* and the *Access and License Agreement*, Kennedy has continued to operate a school in Cedar Park under the name "Apogee Cedar Park" without Acton Academy's consent. *Ex. B at* ¶ *6*. Further, Acton Academy has learned that many of its uniquely interwoven words and phrases, and other structures and elements of the Acton Academy learning design that Acton Academy authored and created,

and that are unusual, unique, proprietary, and not seen in combination in other programs are currently being used by entities organized and/or controlled by Beaudreau and Kennedy, also under the name of "Apogee", and their affiliated schools (including Apogee Cedar Park), without Acton Academy's approval or consent.

Among other things, upon beginning the Apogee school network, Kennedy has used Acton Academy words, phrases, and concepts for use, often verbatim, on Apogee school websites and online content, and continued using the "Apogee" name to deliver substantially similar K-12 educational services in competition with Acton Academy after operating "Apogee an Acton Academy". *Ex. A at ¶ 12, Ex. B at ¶ 14; Ex. A-5; Ex. C at 24:15-20.*

Kennedy (and Beaudreau) partnered with campus affiliates across Texas and the country, including the other Defendants under the "Apogee" banner.[1] The materials and curricula provided to campus affiliates like these are based on the Acton Materials. For example, on March 26, 2024, Defendant Legacy Collaborative d/b/a Apogee Sacramento released a video that details the plan for the Apogee school program to be launched "at more than 50 campuses across the country in the fall."[2] The video—titled "Apogee Sacramento Virtual Information Session"—evidences that now and since their inception, Apogee schools:

(1) are based on the Acton model—*i.e.*, "Acton Academy is a proven innovative educational model that is inspiring a lot of what we are building with Apogee Sacramento … there are going to be a whole network where Matt [Beaudreau] is pulling from his experience from Acton, he is creating his own network-Apogee Schools, Apogee education centers starting across the country";[3]

---

[1] Defendant Apogee Lockhart Life Learning Center, LLC acknowledges receiving support in the form of name recognition and marketing output from its affiliation with the Apogee network. *Ex. D.*

[2] *See* "Apogee Sacramento Virtual Information Session" (Mar. 26. 2024), *available at* https://www.youtube.com/watch?v=4f-TxuGV5pI, at time stamp 30:45 – 30:51.

[3] *Id*. at time stamp 30:00–30:50.

(2) utilize "Mixed-Age Studios" with "guides" and "learners" holding daily "Socratic" discussions and "launches"—*i.e.*, "Our team will act as guides and co-learners"; "Socratic discussions will be a part of our learning environment"; "Mixed-Age Studios … youngers and olders, they learn together";[4]

(3) measure progress or "mastery" of a skill/subject via earning "badges"—*i.e.*, "our learners will earn badges as they learn to prove that they mastered a concept";[5]

(4) have a core-focus on project-based learning over 5-to-6-week periods with a specific exhibition of work at the end";[6]

(5) operate children's business fairs—*i.e.*, "the littles will also be involved in creating their own businesses for the end of the year business fair … middle schoolers will also be involved in the business fair";[7] and

(6) utilize learner internships and apprenticeships—*i.e.*, "they will further enrich their development by engaging in internships, job shadows, and apprenticeships."[8]

In other words, a copied and pasted Acton Academy educational model was misused to launch a competing network.

Apogee Strong also provides a template for its affiliates' websites. This is particularly important because, in July 2024, Beaudreau and Kennedy admitted to wholesale lifting of Acton Academy content for use on Apogee's website/online content:

| **ACTON ACADEMY MATERIAL USED BY APOGEE** | **APOGEE'S RESPONSE** |
|---|---|
| "Equip" learners to "develop their God given talents and gifts" is lifted almost verbatim from Acton's content. | "Definitely leftover remnants of the old Acton website, and should be removed." |

[4] *Id.* at time stamp 37:26–37:43; 37:42–38:37, 47:52–48:51; 49:21–49:41.

[5] *Id.* at time stamp 38:04–39:00.

[6] *Id.* at time stamp 32:39–33:55; 34:25–35:33, 50:54–51:20.

[7] *Id.* at time stamp 33:53–34:20, 45:10–30.

[8] *Id.* at time stamp 34:18–28, 35:31–36:37.

| | |
|---|---|
| Language referring to children as "geniuses" who will "find a calling" and "change the world" is lifted almost verbatim from Acton's mission statement and promises. | "Definitely leftover remnants of the old Acton website, and should be removed." |
| Apogee's daily schedules seem to be appropriated directly from Acton, including 2-13 "Socratic launches" in a day, D.E.A.R. ("Drop everything and read time") and "Core Skills" in the morning and "Quests" in the afternoon. Acton created these combinations of activities and established several of the terms. | "That was or is to be taken off of the website … We won't be using "Socratic launches", "DEAR", or "Quests." Those were all remnants of the old Acton site that have been/are being removed." |
| "We believe children are far more capable than you ever imagined"—this is an original Acton phrase Apogee appropriated from Acton's website. Acton has documented at least ten examples of Apogee using this unique phrase in Apogee's promotional materials. | "Definitely remnants of the olde Acton website, and should be removed." |
| Apogee FAQ text often is appropriated verbatim from Acton website. For example, an Apogee answer to a question about Montessori methods is copied directly from Acton's Website. | "Definitely remnants of the old Acton website, and should be removed." |
| Apogee language for job postings is appropriated directly from Acton's job postings. | "Definitely remnants of the old Acton website, and should be removed." |
| "We believe that learning to do; learning to be and learning to learn are more important than memorization alone – learning to know"—this is copied word for word from Acton's Belief. | "Definitely remnants of the old Acton website, and should be removed." |
| Apogee's Children Business Fair—this is a direct appropriation from Acton's Children's Business Fair. | "Definitely remnants of the old Acton website, and should be removed." |
| Apogee: "Our mission is to inspire each person who enters our doors to find a calling and change the world"—this is copied verbatim from Acton's mission statement. | "Definitely remnants of the old Acton website, and should be removed." |

*Ex. A-5*.

To date, Acton Academy has identified the following Acton Academy words and phrases (collectively, "Acton Trademark Terms") that are unique to Acton Academy and uniquely identify and distinguish Acton Academy services and products that Defendants have misappropriated and used for commercial use:

- The Hero's Journey, which is the key organizing concept for Acton's learning design. Acton Academy is the only K–12 school that uses this as its organizing principle.

- "Learner-driven" as a term to describe the educational approach and used rarely if at all by other schools.

- Labeling students as "Hero's" or "Learners." Acton is the only school that on information and belief uses these terms.

- Movants lifted "Equip" learners to "develop their God given talents and gifts" almost verbatim from Acton's content.

- Movants lifted language referring to children as "geniuses" who will "find a calling" and "change the world" almost verbatim from Acton's mission statement and promises.

- "Guides" or "Socratic guides" as words for "teacher."

- Small mixed age classrooms called "studios," which is a term used by Acton.

- Movants lifted a "badge system" to "track progress" and a promise of "no grades" directly from Acton.

- "Servant Leadership" is a term to describe learners in one studio serving another.

- Apogee's daily schedules and unique program terms seem to be appropriated directly from Acton, including 2–3 "Socratic launches" in a day, D.E.A.R ("Drop everything and read time") and "Core Skills" in the morning and "Quests" in the afternoon. Acton created these combinations of activities and established several of the terms.

- "We believe children are far more capable than you ever imagined" is an original Acton phrase Apogee appropriated from Acton's website.

- Peace corner is a term used in Acton studios.

- Movants lifted "We believe that learning to do; learning to be and learning to learn are more important than memorization alone - learning to know" verbatim from Acton's beliefs.

- Apogee's Children's Business Fair is a copy of Acton's Children's Business Fair.

- Apogee copied "Our mission is to inspire each person who enters our doors to find a calling and change the world" verbatim from Acton's mission statement.

*Ex. A at ¶ 12; Ex. B at ¶ 14.*

Defendant Apogee Strong San Antonio, LLC has acknowledged it removed the phrases "heroes" and "learner driven" from its website in response to Plaintiff's demand for removal of Acton Trademark Terms from Apogee websites, unaware up to that point of any historical connection between Acton and Apogee. *Ex. E.*

## IV. ARGUMENT & AUTHORITIES

### A. Standard of Review for Motions for Summary Judgment

A movant seeking summary judgment must establish the absence of a genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). Summary judgment will not lie if the dispute about a material fact is "genuine", that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505 (1986). All justifiable inferences are to be drawn in the nonmovant's favor. Id., 477 U.S. at 255. Additionally, a court "must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151, 120 S.Ct. 2097 (2000).

### B. Breach of Contract Claim Against Kennedy

Defendant Kennedy contends he is entitled to summary judgment against Plaintiff's breach of contract claim because no enforceable agreement exists by which he may be held personally liable to Plaintiff. That is, Kennedy purports to conclusively negate the first element of Plaintiff's claim. *Dkt. 75 at p. 7.*[9] Kennedy relies on two lines of argument. First, Kennedy maintains that he executed the Trademark License Agreement only in a representative capacity for Apogee Cedar

[9] Plaintiff asserts its breach of contract claim against Defendant Kennedy exclusively. See Dkt. 72 at ¶¶ 48-51. This response will therefore not address Defendant's argument as to the remaining Defendants.

Park, LLC, and not in a personal capacity. Second, Kennedy asserts he did not execute the Access and License Agreement and, in any event, would have executed it only in the same representative capacity. *Dkt. 75 at pp. 7-8.* Evidence controverts both arguments.

It is undisputed that Kennedy executed Acton's Trademark License Agreement on November 9, 2020, on behalf of "Apogee Cedar Park" as its "Owner". *Dkt. 75 at p. 7.* Crucially, Apogee Cedar Park, LLC did not exist as of that date. *Ex. F.* Kennedy does not identify any other legal entity in existence as of November 9, 2020, bearing the name "Apogee Cedar Park".

"[O]ne cannot sign for and bind a legal entity that does not yet exist." *Kahn v. Imperial Airport*, L.P., 308 S.W.3d 432, 438 (Tex.App. – Dallas 2010, no pet.) When a promoter signs a contract on behalf of an unformed entity, he is personally liable on the contract unless there is an agreement with the contracting party that the promotor is not liable. *Id.,* at 438-39 (citing *Fish v. Tandy Corp*., 948 S.W.2d 886, 897 (Tex.App. – Fort Worth 1997, writ denied). The summary judgment record is devoid of any evidence that Acton agreed not to hold Kennedy personally liable under its agreements.

Laura Sandefer attested that Kennedy "signed and accepted" the terms of Acton's Access and License Agreement on November 11, 2020. *Ex. A at ¶ 9.*[10] Kennedy denies having any recollection of having seen or signed the Access and License Agreement, but stops short of directly disputing Sandefer's testimony on this point. *Dkt. 75-6 at p. 1.* Accordingly, there is sufficient evidence to establish a genuine issue of material fact as to whether Kennedy signed or accepted the Access and License Agreement.

---

[10] Sandefer would later acknowledge in deposition testimony that the Access and License Agreement may have been "clicked through" rather than physically executed by Kennedy. *Dkt. 75-12* at 195:16-196:1, 260:15-17.

While Kennedy does not admit to executing a copy of Acton's Access and License Agreement, he insists he only would have ever done so in a representative capacity for the "campus" he undertook to operate as an Acton affiliate:

> "Even if I had signed it, I would have only signed the Access and License Agreement on behalf of the Acton Academy campus and not myself. It makes no sense for me to personally agree to anything since I was never an employee of Acton Academy. I only associated with Acton Academy on behalf of the campus."
>
> *Dkt. 75-6 at p. 1*.

Inasmuch as a campus is not a juridical person, this is a legally invalid distinction. Executing a contract on behalf of a campus is no different than signing on behalf of an assumed or trade name in that the signor only binds himself. *See Kahn*, 308 S.W.3d at 438 (holding signor personally liable for lease executed on behalf of unformed legal entity's anticipated assumed name).

Nor could Kennedy's use of the term "campus" have plausibly referred to Apogee Cedar Park, LLC, which did not exist prior to November 24, 2020 – almost two weeks after Sandefer attests Kennedy "signed and accepted" the Access and License Agreement. *Ex. F*. Because no legal person named "Apogee Cedar Park" existed at the time Kennedy executed or accepted Acton's Trademark License Agreement or Access and License Agreement, Kennedy is personally liable for the various breaches of the agreements described above.

**C. Trademark Claims**

Defendants fail to negate Plaintiff's trademark claims, which are premised on the following facts as set forth above:

- Kennedy signed a Trademark License Agreement barring post-termination use of "Acton Academy" as well as any name deemed similar, including "Apogee" as it was used in connection with Acton while Kennedy's Cedar Park campus remained an Acton affiliate. *Ex. A-1 at ¶ 7; Ex. C at 25:7*.
- Kennedy has kept the name "Apogee" for his Cedar Park campus and even expanded the use of that name to apply to an entire network of campuses. *Ex. C at 24:15-20*.
- Kennedy and Apogee Cedar Park continue to use the domain they are prohibited from using under Acton's Trademark License Agreement as Acton's post-termination affiliate. *Ex. A-1 at ¶ 7; Ex. C at 27:12-25*.
- Acton has identified multiple Acton Trademark Terms used by Apogee, many of which Apogee has admitted to using for its competing network. *Ex. A at ¶ 12; A-5*.
- Defendant San Antonio Apogee, LLC has acknowledged having to remove at least two Acton Trademark Terms from its website in response to Acton's assertion of a trademark on those words and phrases. *Ex. E*.

Defendants' denial of use of the names "Acton Academy" or "Children's Business Fair" is insufficient to conclusively negate Plaintiff's trademark claims in light of such facts.

### D. Defend Trade Secrets Act

Defendants' arguments concerning Acton's trade secret claims fail because Acton took reasonable measures to protect its trade secrets and did not authorize Defendants to use any trade secrets. First, Acton requires people to sign an Access and License Agreement, which limits access to the Acton Materials to authorized users and precludes dissemination of the Acton Materials, prior to obtaining the Acton Materials. *Ex. B. at ¶ 3*; *see DHI Grp., Inc. v. Kent*, Nos. 21-20274,

21-20474, 2022 WL 3755782 at *5, 2022 U.S. App. LEXIS 24585, at *10 (5th Cir. 2022) (holding that requiring customers to sign contract to access database that prohibits disclosure of information is sufficient to establish trade secret protection). "[M]any courts acknowledge that a confidentiality agreement is just one reasonable measure a party may implement to keep its information secret. *N. Miss. Med. Ctr., Inc. v. Quartiz Techs.*, No. 1:23-CV-3-CWR-LGI, 2023 U.S. Dist. LEXIS 176176, at *4 (N.D. Miss. 2023) (citing *Sheets v. Yamaha Motors Corp.*, 849 F.2d 179, 183 (5th Cir. 1988)).

Further, the fact that Acton disclosed the Acton Materials to paying users does not destroy trade secret protection. *See Bishop v. Miller*, 412 S.W.3d 758, 767 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (noting that even if "some or all of the components of the trade secret are well-known," that "does not preclude protection for a secret combination, compilation, or integration of the individual elements") (quotation omitted)); *Metallurgical Indus. Inc. v. Fourtek, Inc.*, 790 F.2d 1195, 1200 (5th Cir. 1986) ("If disclosure to others is made to further the holder's economic interests, it should, in appropriate circumstances, be considered a limited disclosure that does not destroy the requisite secrecy."). By protecting the Acton Materials with the Access and License Agreement, Acton took reasonable measures to protect its trade secrets. And after it terminated Defendants Kennedy and Beaudreau, it required them to return the Acton Materials. *Ex. B at ¶ 5.*

Defendants claim that Acton did not maintain secrecy over the Acton materials because Laura Sandefer discussed certain terminology that Acton uses publicly and because the Acton Materials, in part, build on other programs, such as Montessori. Defendants' argument, however, misunderstands the nature of Acton's trade secret claim. "It is well established that a compilation or aggregation of otherwise publicly available information constitutes a trade secret." *Centurum Info. Tech. Inc. v. Geocent, LLC*, No. CV 21-0082, 2021 U.S. Dist. LEXIS

27661, 2021 WL 533707, at *13 (E.D. La. Feb. 12, 2021); s*ee also Source Prod. & Equip. Co. v. Schehr*, No. CV 16-17528, 2019 U.S. Dist. LEXIS 168365, 2019 WL 4752058, at *7 (E.D. La. Sept. 30, 2019) ("Although some of the shapes, dimensions, and materials of construction used in the Aspect Containers may be in the public domain, the combination of characteristics together can constitute a trade secret."). "Compilations are valuable, not because of the quantum of secret information, but because the expenditure of time, effort, and expense involved in its compilation gives a business a competitive advantage." *El Paso Disposal, LP v. Ecube Labs Co.*, 766 F. Supp. 3d 692, 712 (W.D. Tex. 2025) (quoting *AvidAir Helicopter Supply, Inc. v. Rolls-Royce Corp.*, 663 F.3d 966, 972 (8th Cir. 2011). And when there is evidence that a Plaintiff invested significant time and resources into developing its compilation, a fact issue exists as to whether the compilation is readily ascertainable. *Total Quality Logistics, LLC v. Medellin*, No. SA-23-CV-00333-XR, 2025 U.S. Dist. LEXIS 194570, at *20 (W.D. Tex. 2025); *See also MWK Recruiting v. Jowers*, No. 1:18-CV-444-RP, 2019 U.S. Dist. LEXIS 226401, 2019 WL 7761445, at *12 (W.D. Tex. Jul. 29, 2019) ("In considering whether information is readily ascertainable, courts have considered the expense of compiling it and the method used to acquire customer information.") (citing *Alliantgroup, L.P. v. Feingold*, 803 F. Supp. 2d 610, 625-26 (S.D. Tex. 2011)).

Here, the evidence establishes that the Acton Materials are more than just a handful of words. In fact, the Acton Materials are a compilation of more than 20,000 pages of proprietary materials, all protected contractually. *Ex. B at ¶ 3*. Acton developed the Acton Materials over the course of a decade. *Ex. A at ¶ 5*. Further, Ms. Sandefer has testified that Acton's compilation is what makes Acton unique. *Dkt. 75-12 at 187:20-23*. Though generally discussed in her book and

in a Ted Talk, Defendants have presented no evidence that Acton published the entire compilation of Acton Materials.[11]

Finally, Defendants argue that Jeff Sandefer gave Defendants authorization to use the Acton Materials via an email. Not so. In fact, the email cited explicitly demands return of the Acton Materials. *Dkt. 75-3 at Acton0001*. That Sandefer also states that Kennedy may use public books and speeches does not override Mr. Sandefer's clear directive that Kennedy must return the Acton Materials.

**E. Unfair Competition**

Defendants' arguments concerning Acton's unfair competition claim likewise fail. First, as discussed above, Acton spent over a decade creating and sharpening the Acton Materials. *Ex. A at ¶¶ 5-11*. Though Defendants cite third parties who use several phrases that Acton also uses, this misses the mark once again. What makes Acton special is its unique compilation of the Acton Materials that Acton spent more than a decade creating. *Ex. A at ¶ 5*.

Second, as described above, the record is filled with evidence that Defendants used portions of Acton's trademarks and protected Acton Materials in direct competition with Acton. *Ex. B at ¶¶ 14-15*. As such, summary judgment is improper as to Plaintiff's unfair competition claim. *See Baylor Scott & White v. Project Rose MSO, LLC*, 633 S.W.3d 263, 287 (Tex. App.—Tyler 2021, pet. denied).

---

[11] Additionally, although Ms. Sandefer testified that Acton had similarities to Montessori philosophically, she made clear that Acton was not a copycat of Montessori. *E.g. Dkt. 75-12 at* 39:15-22, 46:2-20, 47:1-4. Nor did Acton violate any Montessori trademark or access use agreements to obtain and copy Montessori's proprietary materials in creating Acton.

**CONCLUSION AND PRAYER**

WHEREFORE, Plaintiff, Acton Academy, a Nonprofit Organization, respectfully prays the Court deny Defendants' Motion for Summary Judgment.

Respectfully submitted,

SNELL LAW

BY: *__/s/ Jason W. Snell__*

Jason W. Snell
Bar No. 24013540
404 W. 13th Street
Austin, Texas 78701
(512) 477-5291 – Telephone
(512) 477-5294 – Facsimile
firm@snellfirm.com – Email

ATTORNEY FOR PLAINTIFF

**CERTIFICATE OF SERVICE**

On May 8, 2026, a true and correct copy of this document was served by e-filing on all counsel of record.

*/s/ Jason W. Snell*
Jason W. Snell